Robert RICHARDSON,
Plaintiff–Appellee,

v.

TOWN OF EASTOVER; Lewis N. Scott, Mayor of the Town of Eastover, in his official and individual capacities; Mildred Patterson; W.Y. Taylor; Edna Scott; Richard J. Johnson, Jr., Members of the Eastover Town Council in their official capacities, Defendants–Appellants.

No. 89–2490.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 29, 1990.

Decided Jan. 14, 1991.

James Lewis Mann Cromer (argued), Cromer & Mabry, Columbia, S.C., for defendants-appellants.

John Wesley Foard, Jr., Columbia, S.C., for plaintiff-appellee; Joseph C. Coleman, on brief.

Before RUSSELL and NIEMEYER, Circuit Judges, and CACHERIS, United States District Judge for the Eastern District of Virginia, sitting by designation.

NIEMEYER, Circuit Judge:

The mayor and town council of Eastover, South Carolina, decided to "clean up" Main Street and therefore not to renew the licenses of the two nightclubs or discos which came up for renewal on April 1, 1988. The town also turned down a third applicant for a license. Robert Richardson, the owner of one of the clubs which were closed, filed suit under 42 U.S.C. § 1983, contending that he was deprived of his property without due process in violation of the Fourteenth Amendment. He named as defendants the Town of Eastover, its mayor, and the members of the town council.

Following a bench trial, the district court found that Richardson was deprived of a property interest and that the process involved did not provide Richardson with adequate notice and an opportunity to be heard. The court rejected the defendants' immunity defenses because it found that the individuals acted in violation of clearly established due process rights. The court entered judgment against all defendants, "including the Town of Eastover and the individual defendants in both their official and individual capacities," for $7,500.

For the reasons that follow, we reverse.

## I

Eastover is a small town, and its procedures for conducting business are simple. Its mayor and a town council of four other persons meet in the evening on the first Monday of each month to conduct the town's business. One council member is the sister-in-law of the mayor; another is

the sister of the appellee Richardson. The chief of police is the brother-in-law of the mayor, and the mayor and Richardson have known each other for most of their lives.

Main Street had been the focus of some complaints over the years. The record shows that, in the neighborhood of the town's two nightclubs, there had been shooting incidents, drug usage, fights, and noise. Richardson himself had been charged at one point with slapping a patron at his club when the patron "attempted to relieve himself at the front door." App. at 54.

Richardson's club, known as the Apollo Club or Apollo Disco Club, served beer and wine and also provided a disc jockey, a juke box, a pool table, a pinball machine, and a video poker game. It operated primarily on Thursday and Friday evenings from 5:30 p.m. until 2:00 a.m. the next morning, and on Saturday from 5:30 p.m. until midnight in order to avoid being open on Sunday.

In 1988 the mayor, with the concurrence of the town council, decided to "clean up" Main Street by not renewing the business licenses of the nightclubs located there. The mayor testified that he had no objection if the nightclubs were located elsewhere.

The reasons given for the town's action are not in dispute. The minutes of the May 1988 meeting state that "all nightclubs on Main Street will not have their business licenses renewed in an effort to clean up Main Street." App. at 150. Minutes of the July 1988 meeting add that the decision is "for the welfare of the citizens of Eastover." App. at 154.

Word about the impending decision to close the nightclubs on Main Street was "on the street" even before the May meeting, and when Richardson went to renew his license on April 1, 1988, the clerk refused his application. Richardson, whose license had been renewed from year to year since 1981 when the Apollo Club opened, complained to the mayor who told him to come to the next town council meeting on May 2, 1988. In the meantime, the mayor told Richardson to continue to operate the Apollo Club until he, the mayor, "got back further" with Richardson.

At the May meeting the mayor addressed Richardson personally. As Richardson recalls, the mayor said, "Bobby, we are trying to clean up Eastover, Main Street, the honky tonks, juke joints, we are not going to allow and not reissuing any licenses, renew any licenses." App. at 25. At the next meeting, on June 6, 1988, Richardson again attended and "presented his views to the council." The minutes provide:

> Mr. Richardson stated that he felt that the decision of the council was unfair because his business has not been a nuisance to the Town and he expressed a concern for his future as a business person. Mayor Scott stated that a decision had been made and the matter was final.

App. at 152. Finally, at the July meeting, the council voted unanimously not to permit any nightclubs on Main Street.

By letter dated August 2, 1988, the town's attorney notified Richardson that the town had refused to renew his license pursuant to paragraph 3 of its business license ordinance. It also advised Richardson that he would have to close his business by August 31, 1988, or face legal action. Paragraph 3 of the ordinance, on which the attorney relied, provides:

> WHENEVER it shall appear to the council that the granting of any license for the pursuit of any trade, business or occupation or profession would be detrimental to the security, welfare, convenience, health, peace, or good government of the town, it may revoke any license previously issued or may refuse to grant a license not yet issued where conditions are such as are set forth in this section.

App. at 160. Richardson closed the Apollo Club as directed and brought this action.

In his complaint Richardson claims that he was given neither a formal written notice of the decision to close his business nor a formal opportunity to present his views. At oral argument, when counsel for Richardson was asked what evidence he would have presented had Richardson been given a more formal hearing, he said he would

have proved that (1) Richardson had never been arrested; (2) he had received no complaints about the operation of the Apollo Club; and (3) he was not aware of the reasons why it should be closed.

## II

The district court, following the two-step process described in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1153, 71 L.Ed.2d 265 (1982) (the court must determine "whether [the plaintiff] was deprived of a protected interest, and, if so, what process was his due"), concluded that the Eastover ordinance granted a property right to Richardson:

> [T]he Eastover business license tax ordinance grants the plaintiff both a benefit, namely, the ability to operate a business, and a claim of entitlement to that benefit upon payment of the business license tax. Accordingly, the Court concludes that the Eastover ordinance has granted the plaintiff a property right in the continued operation of his business.

App. at 172. Having decided that Richardson had a property interest, the district court then concluded that due process was not afforded to Richardson when he was ordered to close his business. It found that Richardson had not been provided adequate notice and that he had "absolutely no opportunity to be heard." The court acknowledged that Richardson had received informal notice and that, as a result, he attended town meetings on his own initiative. It concluded, however, that when he did make his presentations to the town meeting, he was not given a meaningful opportunity to be heard since the town council had already made up its mind. App. at 173–74.

Eastover argues that Richardson had no property interest in the license because the license was extended essentially on an at-will basis and the town could refuse to renew it without a showing of cause. Citing a town ordinance adopted in 1946 and South Carolina law, Eastover argues that a municipality has "absolute discretion" to protect the public morals, health, safety, and general welfare and that this discretion gives Eastover the power to prohibit a business from operating in a given geographical area. The fact that the town has this discretion precludes Richardson from claiming an entitlement in the renewal of his license. Therefore, Richardson had no property interest in having his license renewed. Brief of Appellant at 2–4, citing *Charleston v. Jenkins*, 243 S.C. 205, 133 S.E.2d 242, 243 (1963), and *Darlington v. Stanley*, 239 S.C. 139, 122 S.E.2d 207, 210 (1961). Eastover also suggests that its decision not to renew nightclub licenses was legislative in nature and that due process is therefore not required.

Finally, Eastover contends that due process was afforded to Richardson because he "received an adequate hearing [when he appeared before the town council in June 1988] since he could not have changed the town council's decision and there was no risk of an erroneous deprivation of any property rights." Brief of Appellant at 7.

■ While the Fourteenth Amendment protects against deprivations of property without due process, it does not itself create a property interest. The nature and extent of a property interest is determined by "existing rules or understandings that stem from an independent source such as state law." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). A property interest is not limited to ownership of tangible property but includes those interests that "a person has already acquired in specific benefits." *Id.* at 576, 92 S.Ct. at 2708. As the Court in *Roth* noted:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Id.* at 577, 92 S.Ct. at 2709.

■ A license issued by the state which can be suspended or revoked only upon a showing of cause creates a property interest protected by the Fourteenth Amendment. *Barry v. Barchi*, 443 U.S. 55, 64, 99 S.Ct. 2642, 2649, 61 L.Ed.2d 365 (1979) (license issued by a New York regu-

latory agency to horse trainers and others participating in harness horse-race meets creates a property interest when the license can be suspended only upon proof of certain contingencies). Where a license or similar benefit may be withdrawn at will, however, the holder of the license or benefit has no property interest because he has no legitimate claim of entitlement to something that can be withdrawn at the whim of the grantor. *See Bishop v. Wood,* 426 U.S. 341, 345–47, 96 S.Ct. 2074, 2077–79, 48 L.Ed.2d 684 (1976) (an employee who served "at the will and pleasure" of a city had no entitlement under state law to his continued employment and therefore no property interest); *Bannum v. Town of Ashland,* 922 F.2d 197 (4th Cir.1990) (a city's approval for operation of a halfway house, which could be withdrawn at will, did not create a property interest). Similarly, no property interest is implicated by the nonrenewal of a contract or license where there is no entitlement to the renewal. *Roth,* 408 U.S. 564, 92 S.Ct. 2701 (a professor hired under a one-year contract had no entitlement to its renewal and therefore no property interest).

■■ While an entitlement is required before a property interest is implicated, the entitlement need not be given explicitly. An entitlement to a renewal may be implied, for instance, from policies, practices, and understandings, if state law or other sources support a finding of such an entitlement. *See Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). In *Perry,* a teacher in the Texas state college system who had been employed without tenure under four successive one-year contracts was terminated, allegedly for insubordination. While he agreed that the renewal of his contract was not secured by formal written terms or by a tenure policy, he argued that understandings fostered by the college administration created a *de facto* tenure program. Without deciding whether, under applicable state law or other sources, the teacher had proved an entitlement to a renewal of his contract, the Supreme Court stated:

> In this case, the respondent has alleged the existence of rules and under-standings, promulgated and fostered by state officials, that may justify his legitimate claim of entitlement to continued employment absent "sufficient cause."

408 U.S. at 602, 92 S.Ct. at 2700. The Court concluded that he could establish a property interest protected by the Fourteenth Amendment if he could demonstrate an entitlement in light of "the policies and practices of the institution." *Id.* at 603, 92 S.Ct. at 2700.

■■ Similarly, mutual expectations may create an entitlement in a license. For instance, a state-issued license for the continued pursuit of the licensee's livelihood, renewable periodically on the payment of a fee and revocable only for cause, creates a property interest in the licensee. As the Supreme Court stated in *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971):

> Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood.... In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.

*Id.* at 539, 91 S.Ct. at 1589. *See also Brown v. South Carolina State Bd. of Educ.,* 391 S.E.2d 866, 867 (S.C.1990) (a teacher certificate necessary for employment is a protected property interest).

■ In this case, Richardson obtained a license in 1981 to operate the Apollo Club, and his license was renewed year-to-year simply upon the payment of the prior year's tax. No other procedure or review was conducted by Eastover. Although Eastover contends that the license could have been withheld at its complete discretion, the practice of automatic renewal coupled with the terms of the town ordinance suggests otherwise. The ordinance, on which the council relied in refusing to renew Richardson's license, provides that the license may be withheld when an occupation would be detrimental to the "security, welfare, convenience, health, peace, or good government of the town." App. at 160. The concededly broad ordinance

grants Eastover significant discretion in determining whether to withhold or not to renew licenses. Nevertheless, that the statute does provide reasons for which licenses may be withheld creates a reasonable inference that, in the absence of those reasons, the license will be renewed from year to year. This inference is strengthened by the fact that, until 1988, renewal of licenses in Eastover was a mere ministerial act. The requirement of cause, even though minimal, combined with the fact that Richardson was permitted to operate the Apollo Club, in which he invested his time and resources for six or seven years, supports a legitimate claim to an entitlement and therefore a property interest. *Cf. Barry,* 443 U.S. at 64 n. 11, 99 S.Ct. at 2649 n. 11 (state law "engendered a clear expectation of continued enjoyment of a license"); *Perry,* 408 U.S. at 601, 92 S.Ct. at 2699 (a property interest exists "if there are such rules or mutually explicit understandings that support [the holder's] claim of entitlement to the benefit").

Eastover does not directly address the question of whether the cause requirement in the town's ordinance, coupled with the practice of routine renewal, grants a right. Rather, it argues that Eastover had the legislative power to prohibit a business from operating in a given geographical area to promote the public welfare and that the exercise of a legislative power does not require that due process be afforded to individuals who are affected.

Eastover is correct in that if a town's action is legislative, an affected party has no right to notice and an opportunity to be heard. Fairness (or due process) in legislation is satisfied when legislation is enacted in accordance with the procedures established in the state constitution and statutes for the enactment of legislation. If legislation effects a taking of property, however, the complaining party may challenge the legislation or file a claim for just compensation. In this case Richardson did neither.

Whether Eastover's enactment barring all nightclub licenses on Main Street is legislative, however, is not alto-gether clear. While a legislative enactment is one adopted generally for all citizens in a particular classification, *see, e.g., Bi–Metallic Inv. Co. v. State Bd. of Equalization of Colorado,* 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915), when a rule adopted for general application applies only to a small number of persons, its characterization as legislation becomes suspect.

In *Bi–Metallic,* a property owner challenged an order that increased by forty per cent the valuation of all taxable property in Denver because he was not given due process. Writing for the Court, Mr. Justice Holmes denied the property owner relief, noting, "Where a rule of conduct applies to more than a few people it is impracticable that every one should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole." *Id.* at 445, 36 S.Ct. at 142.

For similar reasons, in *O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980), Mr. Justice Blackmun concurred in the judgment which rejected a demand for due process made by a nursing home and some of its patients. He noted, "That the asserted deprivation of property extends in a nondiscriminatory fashion to some 180 patients also figures in my calculus." *Id.* at 799, 100 S.Ct. at 2483 (Blackmun, J., concurring). He also noted, however, that "the case for due process protection grows stronger as the identity of the persons affected by a government choice becomes clearer; and the case becomes stronger still as the precise nature of the effect on each individual comes more determinately within the decisionmaker's purview." *Id.* at 800–01, 100 S.Ct. at 2483 (citation omitted).

In the present case many indicia suggest that Eastover's refusal to renew Richardson's license was a legislative act. Rather than focusing on a particular licensee or on violations by a particular licensee or group of licensees, the mayor and town council of Eastover focused on public activity on Main Street, including shootings, drugs, fights, and noise, for which the licensees were not

legally responsible. Few of the complaints, if any, were directed against the licensees. Rather, it was the nature of the businesses which contributed to intrusions on the peace and order of the town. The intent to "clean up Main Street" was focused generally, and nothing suggests that Richardson or the other licensee did anything wrong or that they could have corrected the condition, short of ceasing to operate the nightclubs on Main Street.

While all of these factors suggest a legislative function, to the contrary is the fact that only two licensees and one applicant were affected by Eastover's decision. Had Richardson been denied any audience with the town council or any opportunity to controvert the decision to terminate his license, the question would perhaps have to be disposed of squarely.

In this case, however, Richardson was not denied an opportunity to present his views. While it is conceded that he did not get written notice until he received the letter of August 2, 1988, he was fully informed and had multiple opportunities to present his views, and he in fact did so. At the meeting of May 2, 1988, Richardson was told directly by the mayor that the decision had been made to clean up Main Street and that all licenses for discos would not be renewed. At the next meeting, on June 6, the council specifically heard Richardson out. As the minutes state:

> Mr. Robert Richardson, owner of Apollo Disco[,] was in attendance to present his views to the council. Mr. Richardson stated that he felt that the decision of the council was unfair because his business has not been a nuisance to the town and he expressed a concern for his future as a business person.

App. at 152. While his position was rejected, the vote of the council did not take place until the next meeting in July when Richardson was also in attendance. At that meeting the council heard various positive reactions to its earlier expressed intention to clean up Main Street, and each of the council members expressed his or her views in support of the vote. Finally, on August 2, 1988, when Richardson received a formal written notice that his club would be closed, he was given until August 31 to implement the order. During the period from August 2 to August 31, he took no action.

 Due process, at a minimum, requires that a person be given notice of impending action and afforded a hearing. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). The nature of the notice and the quality of the hearing are determined by the competing interests involved. *Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975). Thus, when the property interest that is subject to the deprivation is of minor value, fairness requires a less formal hearing. A more formal hearing would be expected when a significant property interest, one raising the possibility of a grievous or serious loss, is impacted. *See Joint Anti–Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 168, 71 S.Ct. 624, 646, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring); *see also Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976) (discussing factors to be considered when determining what process is due).

 Here, the value of any property interest that a licensee receives from Eastover is diminished by the broad right given by South Carolina to the Town of Eastover to regulate licenses under S.C.Code Ann. § 5–7–30 (Law. Co-op. 1989 Supp.), and the broad discretion reserved by the Town of Eastover in its ordinances to revoke or refuse licenses. The ordinance of Eastover provides that a business license may be revoked or refused if operation of the business would be detrimental to the "security, welfare, convenience, health, peace, or good government of the town." App. at 160. A license that is issued subject to conditions which permit its revocation on such a broad range of contingencies as is contained in the Eastover ordinance is less valuable than one that is subject to revocation only on a stringent showing of cause. Exemplifying this analysis in another context, real property granted in fee simple has greater value than a leasehold in real

property granted only for one year and subject to revocation for a broad range of contingencies. The minimal value, therefore, of the property interest that Richardson held in the license from Eastover is a factor to be considered in determining the quality of notice and the formality of any hearing that is required by due process.

■■ At its elementary level due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657. Here, that is what was provided. On the question of notice, Richardson does not challenge the contention that he received actual notice sufficient to permit him to attend town council meetings and present his views. His complaint on the notice focuses on its quality. He contends that he should have received formal written notice. Undoubtedly formal written notice would have eliminated any doubt on the issue. Due process, however, requires only fundamental fairness of procedure in the context of the circumstances. The mayor of Eastover informed Richardson prior to the meeting of May 2, 1988, that the town council intended to discuss the issue of closing the nightclubs on Main Street. Although the mayor did not invite Richardson to the meeting on his own initiative, he did so when Richardson called the mayor after the renewal of his license had been refused. Pursuant to this informal notice of the meeting, Richardson appeared at the meeting on May 2, 1988. During the period thereafter and before the vote by the town council in July 1988, Richardson was informally notified of two more meetings during which he had the opportunity to present his views on the issue, and he did so. Finally, about a month before Richardson was required to close the Apollo Club, he received written notice. Since Richardson received actual notice, he can claim no prejudice or even unfairness for its having been informal.

■ On the issue of a hearing, due process does not require that in every instance of a deprivation of property, however insig-

nificant, a full-blown evidentiary hearing must be conducted before an impartial tribunal. A hearing need only be provided " 'at a meaningful time and in a meaningful manner' " in the context of all the circumstances. *Mathews,* 424 U.S. at 333, 96 S.Ct. at 902 (*quoting Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)).

■ The *Mathews* case explains that three factors should be considered in determining the nature and timing of a hearing.

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335, 96 S.Ct. at 1903. The *Mathews* balancing test has been applied by this Court to uphold informal, non-adversarial hearings where a doctor was suspended from the Medicare reimbursement program, *Varandani v. Bowen,* 824 F.2d 307, 310–11 (4th Cir.1987), *cert. dismissed,* 484 U.S. 1052, 108 S.Ct. 1000, 98 L.Ed.2d 968 (1988), and where a bus driver was fired for cause, *Rodgers v. Norfolk School Bd.,* 755 F.2d 59, 62–64 (4th Cir.1985).

Considering the *Mathews* factors in this case, Richardson may have had a property interest at stake, *i.e.,* his business license, but the risk that the procedures used could result in an erroneous deprivation of his interest was minimal. In fact, even in hindsight he charges no error to the substance of the town council's decision and makes no argument that a different type of hearing could or would have changed the result. He has never argued that the town council erred in deciding that Main Street needed cleaning up. Indeed, he only argued at the June meeting that the decision to close the nightclubs would be unfair because *his* nightclub had not been a nuisance and that his future as a business person would be affected. Richardson con-

cedes, as he must, that the town council had broad discretion to make the determination that all nightclubs on Main Street should be closed.

Moreover, the probable value of a more formal hearing cannot be supported. When asked at oral argument what further evidence would have been presented had he had a more formal hearing, counsel for Richardson stated that Richardson would have pointed out (1) that he had never been arrested, (2) that he had received no complaints about his business, and (3) that he was not aware of the reasons why his business was closed. Proof on these points would not have affected Eastover's decision. The questions of whether Richardson had ever been arrested or had ever received complaints about his club were not relevant to the town's decision to clean up Main Street. The complaints about the general condition of Main Street were prompted by incidents that occurred in the street near the nightclubs, out of the control of the licensees. Furthermore, Richardson admits that he *was* aware of the reasons why the nightclubs were being closed. In testimony, he quoted the mayor's explanation given at the May 2 meeting for the decision to close the nightclubs.

The circumstances relevant to the third *Mathews* factor—the government's interest and the additional burdens that a more formal process would entail—also weigh against Richardson. The government of Eastover had a legitimate interest in "cleaning up" Main Street. It was properly reacting to complaints of shootings, drug use, fights, and noise. Moreover, Eastover is a small town, and its ability to provide formal hearings is limited. The town council meets only once a month, in the evening, and the council members have other full-time professions. In this case, the town council discussed the nightclub issue on three separate occasions, and it permitted Richardson to participate each time. Weighing all of the *Mathews* factors, we cannot conclude that a more formal hearing was required or would have been useful.

Finally, the argument by Richardson that the mayor of Eastover may have reached a preliminary decision to close the nightclubs on Main Street does not compel the conclusion that Richardson was denied due process. The town council, which made the decision with its vote in July 1988, is entitled to a "presumption of honesty and integrity." *See Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975). "This presumption can only be overcome by demonstrations of 'extrajudicial' bias." *Boston v. Webb*, 783 F.2d 1163, 1166 (4th Cir.1986). Richardson has presented no evidence which would indicate that the members of the town council possessed an "extrajudicial bias" against him, or which would otherwise impugn their honesty and integrity.

We conclude that in the circumstances Richardson was afforded adequate notice and an adequate opportunity to present his views to the town council. The district court erred in concluding that due process required more.

Although the defendants claim absolute immunity as legislators pursuant to *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979); *Reed v. Village of Shorewood*, 704 F.2d 943 (7th Cir. 1983); and *Bruce v. Riddle*, 631 F.2d 272 (4th Cir.1980), and qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), because we have concluded that due process was afforded to Richardson, there is no need to reach the immunity issues.

Accordingly, the judgment of the district court is

REVERSED.