30 F.3d 130
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
SHENANDOAH CENTER, INCORPORATED, t/a Concord, Plaintiff-Appellant,
v.
STATE of West Virginia; Georgew. Lilly, Jr.; John
Russell, Defendants-Appellees.
 No. 93-1489.
 United States Court of Appeals, Fourth Circuit.
 Argued: February 8, 1994.
Decided: July 14, 1994.
 
 Appeal from the United States District Court for the Northern District of West Virginia, at Martinsburg. William M. Kidd, Senior District Judge. (CA-91-46-M)
 Jack L. Gould, Fairfax, Virginia, for Appellant.
 Marvin Richard Dunlap, Dickie, McCamey & Chilcote, P.C., Pittsburgh, Pennsylvania, for Appellees.
 Jeffrey A. Holm, strand, Rhonda L. Wade, Bachmann, Hess, Bachmann & Garden, Wheeling, West Virginia, for Appellees.
 N.D.W.Va.
 AFFIRMED.
 Before PHILLIPS and NIEMEYER, Circuit Judges, and ELLIS, United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Shenandoah Center, Inc., t/a Concord ("Concord"), a private residential behavioral health center licensed by the State of West Virginia, brought this 42 U.S.C. Sec. 1983 action against two state officials in connection with the threatened revocation and the eventual renewal of its operating license. Concord alleged that improper actions of state officials deprived it of a property interest in its operating license and a liberty interest in its reputation as a health care provider in violation of its Fourteenth Amendment due process rights. The district court granted the defendants' motion to dismiss on the ground that Concord suffered no deprivation of either a property or liberty interest. On appeal, Concord challenges only the district court's dismissal of its substantive due process claim alleging wrongful deprivation of a property interest. We affirm.
 
 
 2
 * Concord's facility, located in Yellow Springs, West Virginia, was granted an initial two-year operating license in 1986 by what is now the Division of Health in West Virginia's Department of Health and Human Resources. Concord's license was renewed without incident in 1988 for another two-year period. On October 21, 1989, however, an investigation team led by John Russell, an employee of the Division of Health, arrived unannounced at Concord to investigate charges made against the facility.[1] Concord alleges that the officials refused, in violation of state law, to reveal the substance of the complaint lodged against it. The investigation continued during the next two days.
 
 
 3
 Three days after the conclusion of the on-site investigation, the State filed a petition in state court seeking access to certain of Concord's records. On October 31, 1989, George Lilly, then-acting director of the Division of Health, advised Concord that its license would be revoked effective November 6, 1989, primarily because it refused to permit the Division of Health to review its records. Lilly also informed Concord that it was entitled to a hearing challenging the revocation.
 
 
 4
 Concord requested a hearing, which was set for November 6, the date of announced revocation. While the hearing was pending, Lilly notified officials of Maryland, the District of Columbia, and Fairfax County, Virginia, as well as facilities in West Virginia, that Concord was under criminal investigation on allegations of mismanagement, client abuse, medical neglect, and license violations, and that its license would be revoked and the facility closed on November 6th. These jurisdictions, which had citizens who were patients at Concord, were told they would need to find other housing for their residents.
 
 
 5
 At the November 6th hearing, Concord and the State reached an agreement staying revocation of Concord's license and limiting the scope of the state investigation. The State also agreed to inform Concord of the specific substantive charges against it and to notify the various officials and facilities mentioned above that Concord was to remain open. The agreement was incorporated in a consent order filed in state court.
 
 
 6
 A second state court hearing was set for December 14, 1989, to consider the State's request for access to Concord's records. A few days before the hearing, Lilly mailed to officials of Fairfax Co., the District of Columbia and Maryland a 103 page Statement of Deficiencies concerning the Concord facility. Concord was sent a copy of the statement and a letter indicating that the State would seek revocation of its license.
 
 
 7
 At the December 14 hearing, the state court sealed the Statement of Deficiencies upon the parties' agreement to the appointment of an independent monitor who was to observe Concord for six months and then report to the court. This agreement was incorporated in a Consent Decree entered by the court.
 
 
 8
 The independent monitor issued a final report in October of 1990. The State nevertheless conducted its own relicensing investigation, as permitted under the Consent Decree,[2] during the period August to December of 1990. After submitting two plans of correction to the State, the second of which the State approved, Concord was issued a full operating license.
 
 
 9
 Concord then filed this Sec. 1983 action alleging wrongful deprivation of its liberty and property interests, naming as defendants the State of West Virginia, Russell, and Lilly. The claim against the state was dismissed on Concord's concession of its immunity to suit under Sec. 1983. The claims against the individual defendants were dismissed on their Rule 12(b)(6) motions (converted to motions for summary judgment by the court's consideration of materials outside the pleadings in accordance with the Rule). The district court held that, as a matter of law, Concord had suffered no deprivation of a property or liberty interest by virtue of the defendants' actions related to its license. Alternatively, the court found that the defendants had qualified immunity.
 
 
 10
 This appeal followed. On it, Concord only challenges the dismissal of its claim of deprivation of a property interest without due process.
 
 II
 
 11
 The critical first questions in this as in any claim of deprivation of property without due process are whether the claimant has a constitutionally protected property interest and, if so, of what nature? Board of Regents v. Roth, 408 U.S. 564, 570-71 (1972). Only if there is such an interest can there be any deprivation, and if there is such an interest, its exact nature may determine whether the challenged state action did operate as a specific deprivation of the interest. Id. at 569-70; Sui v. Johnson, 748 F.2d 238, 244 (4th Cir.1984).
 
 
 12
 The district court ruled, implicitly assuming arguendo that Concord had a protectible property interest in its state-granted license, that no deprivation of that interest had occurred for the simple reason that, in the end, the license was not revoked but renewed. Shenandoah Center, Inc. v. West Virginia, No. 91-00046-MCK (N.D.W.V. Mar. 31, 1993). As the court put it, "[w]hile[Concord] was certainly threatened ... with license revocation and with non-renewal, [it] pursued the processes provided [with the result that] there was no revocation, and its license was renewed." Id.
 
 
 13
 We agree with the court's ultimate conclusion, but believe its analysis did less than full service to the exact claim made by Concord. As we understand it, the claim is that the property interest created by the license is one entitled to protection not only against revocation without due process, but against unwarranted and economically damaging intrusions by the state so long as the license is in effect, and that the state's investigative activities here constituted such an unwarranted and damaging intrusion. As actually characterized by Concord, the claim is that the defendants "violated Concord's substantive due process right by depriving Concord of the right to fully use and enjoy its license." Brief of Appellant at i, 1, 5.
 
 
 14
 There is no doubt that Concord's operating license constituted a state-created property interest that could only be revoked for cause, W. Va.Code Secs. 27-9-1, -17-3 (1992), hence was subject to the Fourteenth Amendment's protections against suspension or revocation without due process. Richardson v. Town of Eastover, 922 F.2d 1152, 1156 (4th Cir.1991) ("A license issued by the state which can be suspended or revoked only upon a showing of cause creates a property interest protected by the Fourteenth Amendment."). There is also no doubt, however, that as the district court found, there was no deprivation of this particular incident of the property interest since the license was never revoked or suspended.
 
 
 15
 That raises the question whether the property interest created by such a license also includes as an incident the right to its "quiet enjoyment" against unwarranted and damaging intrusions by the state so long as it is in effect. For purposes of this case, we may assume, without deciding, that it does, and that such an intrusion could constitute a deprivation of property amounting, under sufficiently egregious circumstances, to a substantive due process violation.
 
 
 16
 Making that assumption, we would yet conclude that there was no such deprivation here as a matter of law. Whether the claim is of denial of procedural or substantive due process protections, the nature of the interest here is such that no deprivation occurred. Clearly, any such interest as there might be in the "quiet enjoyment" of this license so long as it was in effect was not an absolute one. It is, under the very state law that creates the license, a severely qualified one. First, it is of limited duration; the license is good for two years only, subject to renewal. More critically, it is held subject to compliance with a stringent set of rules and regulations. See W. Va. Dept. of Health, Legislative Rules, Sec. 64-11-5.1.5. Implicit in the regulations is yet a third limitation that is the most critical for our purposes. The license is held subject to the express right of the State to monitor compliance with its rules and regulations for operation under the license. Specifically, the State has the right and obligation to inspect licensed facilities and to review their records. See, e.g., W. Va.Code Secs. 27-9-1 & -17-3 (1992) ("The director [of health] ... shall have the authority to investigate and inspect any such facility...."); W. Va. Dep't of Health, Legislative Rules, Sec. 64-5-1.11 ("Neither an initial, renewal or a provisional license shall be issued unless an inspection has been made."); id. Sec. 64-5.6.1 ("An on-site inspection of every center ... shall be conducted no less frequently than once every two years ....") (emphasis added);id. Sec. 65-5.7.2 ("The director shall conduct an investigation of [any] complaint.") (emphasis added).
 
 
 17
 Any property interest in "quiet enjoyment" of this license against state interference is thus--for obviously good and necessary reasons given the nature of this type facility--by its very nature subject to highly intrusive state monitoring both for renewal and complaint investigating purposes. That business interruptions may occur in consequence of such intrusions is implicit in the law which confers the license. This includes the possibility that in investigating colorable complaints of violations, state officials may indeed have the obligation to do what they did here in notifying intimately affected third parties of the possibility of license revocation.
 
 
 18
 We conclude that, as a matter of law on the record before the district court, the individual state official defendants conducted a reasonable, though perhaps not a letter-perfect, investigation, based upon an obviously valid complaint against Concord given the corrective action which eventually it agreed to take. Accordingly, there was no deprivation of any such "quiet enjoyment" property interest as may have existed in Concord by virtue of its operating license.
 
 
 19
 The district court did not err in dismissing the action.
 
 AFFIRMED
 
 
 [1]
 State regulations permit unannounced inspections by the Division of Health. W. Va. Dep't of Health, Legislative Rules,Sec. 64-11-5.7.3
 
 
 [2]
 The Settlement Agreement in the Consent Decree provided:
 The Division shall conduct a full licensing visit within 60 days of receipt of notification from the independent monitor that the quality assurance program has been fully implemented and in no event later than 210 days from the date of execution of the Agreement. The licensing review shall consider only events, reports, polices and procedures from January 1, 1990 onward. Concord's license and authority to operate shall remain in full force and effect until the relicensure process is completed.
 JA 31.