PER CURIAM.
Plaintiff-appellant Victoria Butler was expelled from William and Mary’s School of Education Community Counseling Masters Program (“Counseling Program”) following the Spring 2002 semester. Butler sued the defendants-appellees, the Rector and Board of Visitors of the College of William and Mary (“William and Mary”), claiming that her expulsion violated both procedural and substantive due process and constituted a breach of contract and tortious interference with contract under Virginia law. The district court dismissed all of Butler’s claims with prejudice pursuant to Federal Rule of Civil Procedure 50(a). For the reasons given herein, we affirm.
I.
In April 2001, William and Mary admitted Butler to the Counseling Program. For the Spring 2002 semester, Butler enrolled in a course entitled “EDC42, Practicum'in Counseling” (the “Practicum”), an off-campus course taught by Dr. Teri B. Ancellotti and designed to provide students with their first client contact in a closely-supervised setting. As part of the Practicum, students were asked to find a site where they could conduct videotaped counseling sessions. Butler performed the Practicum at the Prevention Services Department of the Newport News Colonial Services Board (“CSB”), where she was supervised by CSB employee Amber Bodner.
Upon hearing from Butler’s doctoral supervisor, Mr. Denny Frank, of possible problems with Butler’s Practicum, Dr. Ancellotti contacted Bodner. Bodner informed Dr. Ancellotti that CSB was only a prevention site and that she had made clear to Butler that no counseling occurred there. Bodner further noted that CSB emphasized to Butler that no videotaping would be permitted at CSB.[1] In addition, Bodner told Dr. Ancellotti that Butler inappropriately “promot[ed] herself as an individual counselor with professional experience” and told a client to meet with her secretly for individual counseling. According to Bodner, Butler also told the client that she might lose custody of her children if she disclosed anything to the CSB counselors. Bodner informed Ancellotti that CSB would have problems working with Butler in the future.
On February 7, 2002, Dr. Ancellotti and Mr. Frank met with Butler to discuss their concerns, among them that Butler had been deceitful in obtaining approval of her Practicum site and the allegations of misconduct. They discussed Bodner’s accusations, which Butler denied. Butler stated that others at CSB could substantiate her version of the events regarding the Practicum, but Dr. Ancellotti and Mr. Frank did not call those individuals.
On February 11, 2002, the Counseling Program faculty, including Dr. Ancellotti and Mr. Frank, met to discuss Butler’s Practicum. At that meeting, the faculty decided to remove Butler from the Practicum ánd subject her to certain conditions required for her continuation in the Counseling Program. Butler was subsequently informed of this decision and given a written memorandum outlining the conditions required by the faculty. Butler was required to, inter alia, maintain an acceptable rating (level 3 out of 5) on her “Professional/Personal Performance Criteria” review, a student evaluation system in which Program faculty evaluate students *518 on semester review forms (hereinafter “Semester Review”). In addition, Butler was required to meet with her faculty ad-visor monthly to discuss her progress. During this period, Dr. Ancellotti and Mr. Frank also submitted allegations of ethical and legal misconduct against Butler based on the same Practicum circumstances to the School of Education Honor Council. Butler was ultimately acquitted of all the charges before the Honor Council.
In early April, 2002 Butler was informed that she had received three sub-par Semester Reviews. Each review rated Butler below the acceptable level and provided the reasoning behind the ratings. Faculty members noted, among other things, that Butler “accosted,” “threatened,” and “stalked” other students and members of the faculty — making both her fellow students and faculty members scared and uncomfortable. Butler was provided copies of these reviews on April 15, 2002.
In late April 2002, the Program faculty met to discuss Butler’s status and unanimously recommended to Tom Ward, the Associate Dean of the William and Mary School of Education, that Butler be expelled from the program. Dean Ward reviewed the recommendation and agreed with it. He then asked Virginia McLaughlin, Dean of the School of Education, to review his decision. Butler was told on May, 2, 2002, that the faculty recommended that she be removed from the program.
On May 14, 2002, Dean McLaughlin met with Butler to discuss the faculty recommendation. Butler acknowledges that, at this meeting, she was given an opportunity to tell her side of the story and present evidence in support of her desire and fitness to remain in the program. After considering the evidence, Dean McLaughlin upheld the decision to remove Butler from the program. Butler was informed of that decision in writing on May 21st, 2004.
Subsequently, Butler filed the present action under 42 U.S.C. § 1983, alleging that William and Mary violated her substantive and procedural due process rights by expelling her. She also claimed that her expulsion amounted to a breach of contract and tortious interference with contract under Virginia law.
The case proceeded to trial on August 21, 2002. At the close of Butler’s evidence, William and Mary moved for judgment as a matter of law on all claims pursuant to Federal Rule of Civil Procedure 50(a). The trial court granted the motion and Butler timely appeals.
II.
The district court should grant a Rule 50(a) motion for judgment as a matter of law only if the nonmoving party has been fully heard and, viewing the evidence presented in the light most favorable to the nonmoving party, there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. Fed.R.Civ.P. 50(a)(1); Brown v. CSX Transp., Inc., 18 F.3d 245, 248 (4th Cir. 1994). We review the district court’s decision de novo. Brown, 18 F.3d at 248.
A.
The Due Process Clause of the Fourteenth Amendment to the Constitution protects life, liberty, and property interests from arbitrary government action. Stewart v. Bailey, 7 F.3d 384, 392 (4th Cir.1993). We assume for purposes of this appeal that Butler has a property interest in continued enrollment in the Program that is protected by the Due Process Clause. See Tigrett v. Rector and Board of Visitors of the Univ. of Va., 290 F.3d 620, 627 (4th Cir.2002) (noting that the *519 Supreme Court and the Fourth Circuit have made this assumption). We are nevertheless mindful of the deference courts traditionally accord academic decision-making. See id. at 629-30.
In order to establish a substantive Due Process violation, Butler must demonstrate that William and Mary’s actions in expelling her were so arbitrary and egregious as to “shock the conscience.” See Sacramento v. Lewis, 523 U.S. 833, 846-47, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998); see also Dunn v. Fairfield Community High School Dist. No. 225, 158 F.3d 962, 965 (7th Cir.1998). Butler’s claim does not meet this standard.
Butler relies heavily on the fact that she was “exonerated” by the Honor Council of charges stemming from the same allegations for which she was subsequently expelled to argue that the faculty conduct was “arbitrary” and “egregious.” Butler contends that “the College is bound by the determination of the Honor Council proceedings,” or that, at the very least, a reasonable jury could conclude that the Program faculty were so bound. Appellant’s Brief at 32. Fatal to Butler’s argument, however, is her failure to produce evidence that demonstrates any relevant institutional connection between the student-run Honor Council proceedings and the faculty-imposed remedial action plan applied to her. No reasonable jury could find, based on the evidence Butler presented, that the Program faculty were bound by, or even connected to, the Honor Council exoneration. The two processes were independent.
The School of Education faculty decided to subject Butler to remedial actions after considering allegations that she had been deceitful in obtaining approval of her Practicum site and that she engaged in misconduct at that site. Following three independent semester evaluations, student input, additional faculty consideration, and an opportunity for input from Butler, the faculty, Assistant Dean, and Program Dean all agreed to expel Butler from the Program.
Butler has not persuaded us that the behavior described above “shocks the conscience” or otherwise rises to the level of a substantive due process violation. On the contrary, it appears well within the bounds of constitutionally acceptable behavior. Accordingly, we affirm the district court’s dismissal of Butler’s substantive Due Process claim.
In addition to substantive due process guarantees, the Due Process Clause also required William and Mary to provide Butler with certain procedural protection before expelling her from the Program.[2] As discussed below, William and Mary’s actions in this case meet that constitutional burden.
“At a minimum, the Constitution requires notice and some opportunity to be heard.” Mallette v. Arlington County Employees’ Supplemental Retirement System II, 91 F.3d 630, 640 (4th Cir.1996) (citing Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U.S. 123, 178, 71 S.Ct. 624, 95 L.Ed. 817 (1951)). “Above that threshold, due process ... is ‘flexible and calls for such procedural protections as the particular situation demands.’ ” Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). “The nature of the notice and the quality *520 of the hearing are determined by the competing interests involved.” Richardson v. Town of Eastover, 922 F.2d 1152, 1159 (4th Cir.1991).
Keeping this flexibility in mind, we view the procedural due process given to Butler through the three factor balancing test that the Supreme Court discussed in Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Specifically, we balance
[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
Mallette, 91 F.3d at 640 (quoting Mathews, 424 U.S. at 335).
We note initially that William and Mary certainly provided Butler with the rudiments of procedural due process — notice and an opportunity to be heard. William and Mary informed Butler of the most serious charges and complaints against her and provided her with an opportunity to respond. She was given written copies of the most serious charges against her. Additionally, she was given notice of the most grievous punishment— expulsion — 12 days before she met with Dean Laughlin to respond. At that meeting she not only disputed evidence against her, but also provided her own evidence arguing that she should not be expelled from the program. Only after considering that evidence, along with the unanimous recommendation of the faculty as well as Associate Dean Ward, did Dean McLaughlin decide to expel Butler.
Considering these facts in light of the Mathews test, we hold that Butler received the requisite constitutional procedural due process. Butler’s interest in remaining in graduate school is unquestionably high. However, William and Mary’s interest in controlling the integrity of its graduate programs is also high. Accordingly, this case hinges on the second Mathews factor: “the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards.” Mathews, 424 U.S. at 335.
Butler has not demonstrated how additional procedural process would have helped her in this case. Counsel for Butler at oral argument suggested that a trial-like proceeding, with the attendant right to call and cross-examine witnesses, should have been afforded. However, we find no basis in the law, nor does Butler provide one, for importing such a requirement into the academic context.
Butler was given notice and an opportunity to respond to all charges against her. She does not claim that she had evidence which she was not able to present because of a lack of procedural safeguards. She argues that William and Mary was wrong to believe the charges against her and not believe her. But that argument, even if true, does not rise to the level of a procedural due process violation.
Therefore, because Butler was afforded substantial process, and because she cannot demonstrate any probative value that additional process would have provided, she has not made her claim for a violation of procedural due process. We affirm the district court’s dismissal of her procedural due process claim.
B.
Finally, Butler contends that the district court erred in dismissing her *521 breach of contract and tortious interference with contract claims against William and Mary. Specifically, she contends that a reasonable jury could conclude that William and Mary breached a contract with her by expelling her after the Honor Council refused to punish her. We disagree.
Assuming that William and Mary had a contract with Butler, it did not breach that contract by expelling her after the Honor Council refused to punish her. As discussed previously, the Honor Council and the Program faculty serve two separate and distinct functions, and Butler has presented no evidence demonstrating that the Program was bound by the Honor Council decision. Butler also has not presented evidence demonstrating that, by expelling her in the manner that it did, William and Mary breached an express or implied promise to Butler. In short, Butler’s breach of contract claim is legally and factually baseless. Because tortious interference with contract under Virginia law requires a breach of contract, Butler’s tortious interference claim also fails. See Chaves v. Johnson, 230 Va. 112, 335 S.E.2d 97, 102 (1985).
III.
Viewing the evidence presented at trial in the light most favorable to Butler, we hold that, as a matter of law, there is no legally sufficient evidentiary basis through which a reasonable jury could have found for Butler on her due process or contractual claims. Accordingly, we hold that the district court did not err in granting William and Mary’s Rule 50(a) motion.

AFFIRMED

. Butler told CSB that she and William and Mary had "worked out” the videotaping issue.

. We assume for purposes of this appeal, but need not decide, that Butler’s expulsion was for disciplinary and not academic reasons. Disciplinary dismissals require greater procedural safeguards than academic dismissals. See Henson v. Honor Comm. of Univ. of Va., 719 F.2d 69, 74 (4th Cir.1983). It is unnecessary to reach this issue because we conclude that William and Mary’s conduct satisfies even the more exacting standard.