**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RALPH E. THORNTON; CHERYL A.
THORNTON,
                 *Plaintiffs-Appellants,*

           v.

CITY OF ST. HELENS; WARREN
BAKER; BRIAN LITTLE,
                 *Defendants-Appellees.*

No. 03-35994

D.C. No.
CV-02-00325-REJ

OPINION

Appeal from the United States District Court
for the District of Oregon
Robert E. Jones, District Judge, Presiding

Argued and Submitted
May 6, 2005—Portland, Oregon

Filed September 6, 2005

Before: Alfred T. Goodwin, A. Wallace Tashima and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Clifton

12445

**COUNSEL**

James D. Huffman, Huffman & O'Hanlon, St. Helens, Oregon, for the plaintiffs-appellants.

Cecil Reniche-Smith and Janet M. Schroer, Hoffman, Hart & Wagner, LLP, Portland, Oregon, for the defendants-appellees.

## OPINION

CLIFTON, Circuit Judge:

Ralph and Cheryl Thornton own the only automobile wrecking yard in St. Helens, Oregon. The Thorntons claim that the City of St. Helens has unlawfully conditioned approval of their annual applications to renew a state wrecker's certificate on compliance with local land use regulations. Following repeated delays in the processing of the Thorntons' renewal applications, they filed suit in district court against the City and certain local officials. The Thorntons alleged, among other claims, that the certificate renewal procedures employed by the City had resulted in delays which amounted to a deprivation of property without due process of law. The district court denied relief. The court held that the Thorntons did not have a property interest in the timely approval of their renewal applications and that their related claims were without merit.

We affirm. An adverse judgment in a prior state court action brought by Mr. Thornton bars relitigation of the issue of whether the City has discretion to condition approval of renewal applications on compliance with local regulations. Because we must accept the state court's determination that the City has discretion to deny a renewal application for non-compliance with local regulations, we hold that the Thorntons do not have a property interest in the timely renewal of their wrecker certificate. The Thorntons' related claims fail as a matter of law.

## I.  Background

An operator of an auto wrecking yard in Oregon is required to obtain a certificate from the state and must renew the certificate each year. Or. Rev. Stat. § 822.125(1), (3). The procedure for issuing and renewing wrecker certificates is governed by Oregon Revised Statutes §§ 822.110, 822.115, 822.125,

822.135 and 822.140. Once a wrecker certificate is issued, section 822.125(3) provides that the certificate

> is valid for a one-year period and may be renewed as provided by the department. The department shall only renew the certificate of any certificate holder who does all of the following:
>
> . . .
>
> (c) Obtains local government approval under [Or. Rev. Stat. §] 822.140. The department may waive the requirement that an applicant for renewal obtain local government approval under [section] 822.140 of the suitability of the applicant to establish, maintain or operate a wrecking yard or business.

Or. Rev. Stat. § 822.125(3). Section 822.140(2) provides that

> [a] city or county governing body shall grant approval of a wrecker certificate or renewal when requested under this section if the governing body:
>
> (a) Approves the applicant as being suitable to establish, maintain or operate a wrecker yard or business;
>
> (b) Determines that the location or proposed location meets the requirements for location under [Or. Rev. Stat. §] 822.110;
>
> (c) Determines that the location does not violate any prohibition under [Or. Rev. Stat. §] 822.135; and
>
> (d) Approves the location and determines that the location complies with any regulations adopted by a city or county under this section.

Or. Rev. Stat. § 822.140(2). If a renewal application is not approved before the existing certificate expires, the wrecking

yard must suspend operation until a new certificate is issued. *See* Or. Rev. Stat. §§ 822.100(1)(a), 822.135(1)(a).

In 1998, final approval of the Thorntons' renewal application for the 1999 wrecker certificate was delayed until April 16, 1999. Because of the delay, the Thorntons were forced to close the wrecking yard for more than three months pending approval of the application. The Thorntons blamed the processing delay on the City's attempt to condition approval of their renewal certificate on compliance with various municipal regulations.

Mr. Thornton filed a declaratory judgment action against the City in state court on May 23, 1999. As amended, the complaint alleged that the City had no power to withhold approval of a renewal application. The lawsuit sought a ruling that the governing state statutes preempted the application of local regulations in the wrecker certificate renewal process.

On December 1, 1999, while the state action was pending, the City adopted Ordinance 2808, which established specific procedures and criteria for reviewing renewal applications. Shortly after Ordinance 2808 was adopted, Mr. Thornton submitted an application to renew his certificate for the year 2000. The application was initially approved and then later denied by the City. The City eventually withdrew its objections to the application and issued a new certificate on March 14, 2000. The wrecking yard was closed for over two months in the interim.

Mr. Thornton moved for summary judgment in the state court action. He argued that the City lacked the power to condition approval of his renewal application on compliance with local land use laws because section 822.140 required local governments to approve any application that complied with sections 822.110 and 822.135. In response, the City asserted that the relevant state statutes allowed local land use regulations to supplement state law in the approval process. The

trial court denied the motion. In its oral decision, the court held that state law did not preempt local regulation of wreckers after the initial certificate had been granted. Shortly after the court issued its decision, the City moved for summary judgment. The City argued that it was entitled to dismissal because, in denying Mr. Thornton's motion, the court had effectively resolved the action in favor of the City. The court agreed and dismissed the case with prejudice. The Oregon Court of Appeals affirmed without opinion on February 6, 2002.

The City replaced Ordinance 2808 with Ordinance 2832 on November 15, 2000. Ordinance 2832 simplified and shortened the application review process, but delays in approving the Thorntons' annual renewal applications continued. As a result of those delays (and time taken by the State to issue and transmit the certificate), the Thorntons have been forced to close the wrecking yard for a number of days at the beginning of each year.

On March 15, 2002, the Thorntons filed the current action in federal district court. The original complaint named the City; the city manager, Warren Baker; the city planner, Brian Little; and certain St. Helens elected officials as Defendants. The complaint alleged that the City lacked the power to enact Ordinance 2808 and that the requirements imposed by that measure deprived the Thorntons of property without due process of law. The Thorntons further alleged that Defendants had conspired to deny them equal protection of the law and had intentionally interfered with contractual relations.

Defendants moved for summary judgment. By order entered November 19, 2002, the district court granted the motion in part. *Thornton v. City of St. Helens*, 231 F. Supp. 2d 1019, 1026 (D. Or. 2002). The court reasoned that the Thorntons were not precluded from challenging Ordinance 2808 because the validity of that measure was not actually litigated in the prior action. *Id.* at 1024. The court concluded,

however, that the individual defendants were immune from suit generally, that the Oregon Tort Claims Act ("OTCA") insulated the individual defendants and the City from suit on the state law claim and that the Thorntons had not otherwise stated a cognizable claim against the City. *Id.* at 1026. The court granted the Thorntons leave to file an amended complaint that "(1) eliminate[d] all constitutional claims against the individual City Council members, and (2) allege[d] with specificity their constitutional claim(s) against the City itself." *Id.*

In their amended complaint, the Thorntons added factual detail to support their allegations and dropped both the state law claim and the allegations against the elected officials. The Thorntons again named Baker and Little as defendants. The first count of the amended complaint largely repeated the claim that Defendants had used Ordinance 2808 to deprive the Thorntons of property without due process of law. The second count alleged that Mrs. Thornton was Native American and that Defendants, acting out of racial animus, had conspired to deny the Thorntons due process and equal protection.

The district court granted summary judgment in favor of Defendants. As for Little and Baker, the court concluded that the Thorntons did not have leave to rename the individual defendants and, even if they had, that the Thorntons had not advanced a meritorious claim against them. Turning to the City, the court reasoned that state law "permits the City to rest its decision to approve or deny a wrecker's certificate on criteria of its own creation" and, further, that the adverse judgment in the prior action barred the Thorntons from relitigating the issue of the City's authority. Accordingly, the court held that the Thorntons did not have "a constitutionally protected property right in the timely annual renewal of their automobile wrecker's certificate." With respect to the Thorntons' conspiracy claim, the court determined that they had failed to show disparate treatment, a conspiracy or racial animus. The Thorntons timely appealed.

## II.  Discussion

### A.  *Legislative Immunity*

**[1]** Legislators are absolutely immune from liability for their legislative acts. *Bogan v. Scott-Harris*, 523 U.S. 44, 46 (1998). This immunity extends to the legislative acts of state and local legislators, even in suits brought pursuant to 42 U.S.C. § 1983. *Id.* at 49. For immunity to attach, the allegedly unlawful action must have been a legislative function. *Id.* at 51-52.

**[2]** Baker and Little are not entitled to legislative immunity. Baker is the city manager and Little is the city planner. Their jobs are administrative in nature and they were sued for performing an administrative act. Specifically, the Thorntons' amended complaint named Baker and Little as the persons "responsible for processing the annual renewal application[s]." Processing an individual application pursuant to an established policy is not a legislative function. *See Haskell v. Washington Township*, 864 F.2d 1266, 1278 (6th Cir. 1988); *Scott v. Greenville County*, 716 F.2d 1409, 1423 (4th Cir. 1983). Because Baker and Little are not legislators and were not sued for performing a legislative act, legislative immunity does not shield them from suit. *See Chappell v. Robbins*, 73 F.3d 918, 920-21 (9th Cir. 1996). The district court erred in concluding otherwise.[1]

---

[1]Defendants argue that the Thorntons waived any claim that Baker and Little are not entitled to legislative immunity by failing to raise that argument in district court. We disagree. Although we ordinarily do "not consider arguments that are raised for the first time on appeal," *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999), the Thorntons' oversight is excusable. The original complaint named Baker, Little and several St. Helens elected officials as defendants. In support of the first motion for summary judgment, Defendants argued that the individual defendants were entitled to legislative immunity. The district court agreed and held that "to the extent that plaintiffs' claims against the individual *City Council members* rest on enactment of Ordinance 2808, summary judgment must be

### B.   42 U.S.C. § 1983

To prevail in a civil action against state actors for the deprivation of "rights, privileges, or immunities secured by the Constitution and laws," 42 U.S.C. § 1983, a plaintiff must show that "(1) acts by the defendants (2) under color of state law (3) depriv[ed] [him] of federal rights, privileges or immunities [and] (4) caus[ed] [him] damage," *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994). Section 1983 " 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, the conduct complained of must have deprived the plaintiff of some right, privilege or immunity protected by the Constitution or laws of the United States. *See id.*

The Thorntons assert the deprivation of two constitutional rights: procedural due process and equal protection. We address each claim in turn.

---

granted in favor of the individual defendants." *Thornton*, 231 F. Supp. 2d at 1025 (emphasis added). Leave to amend was given, provided that the Thorntons eliminated "all constitutional claims against the *individual City Council members*." *Id.* at 1026 (emphasis added). The amended complaint did not rename the elected officials, only Baker and Little. Defendants did not reassert legislative immunity in their second motion for summary judgment. In granting summary judgment on Defendants' second motion, however, the court tersely observed that "[i]n disregard of this court's express order, plaintiffs again assert claims against the individual defendants. Plaintiffs did not seek leave to do so . . . ." The court apparently believed that Baker and Little were city councilmembers and, as the prior order directed, the Thorntons did not have leave to rename councilmembers. The court was mistaken as to Baker and Little's official status. Until the order dismissing the case with prejudice was issued, however, the Thorntons had no reason to argue that Baker and Little were not entitled to legislative immunity. We will not hold the Thorntons responsible for failing to correct an error that they did not know the district court had committed.

### 1.  Due Process

According to the Thorntons, the applicable state statutes require local governments to approve renewal applications upon submission of the correct form and proof that the applicant has complied with the state-mandated criteria. Because certificate holders are entitled to renewal if they comply with statutory conditions, so the argument goes, they have a protectible property interest in the reissuance of a certificate, or at least in City approval of an application for the same. The Thorntons contend that by unlawfully imposing additional conditions on an application to renew a wrecker certificate, the City has deprived them of property without due process of law.

**[3]** A "procedural due process claim hinges on proof of two elements: (1) a protectible liberty or property interest . . . ; and (2) a denial of adequate procedural protections." *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998). Property interests are not created by the Constitution but "by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). To have a property interest in a government benefit, such as the right to renew a certificate, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* The "mere fact a person has received a government benefit in the past, even for a considerable length of time, does not, without more, rise to the level of a legitimate claim of entitlement." *Doran v. Houle*, 721 F.2d 1182, 1186 (9th Cir. 1983).

**[4]** At one pole, a state operating license that can be revoked only "for cause" creates a property interest. *See, e.g.*, *Barry v. Barchi*, 443 U.S. 55, 64 (1979). At the opposite pole, a statute that grants the reviewing body unfettered discretion

to approve or deny an application does not create a property right. *See, e.g.*, *Jacobson v. Hannifin*, 627 F.2d 177, 180 (9th Cir. 1980). Whether a statute creates a property interest in the renewal of an existing operating license falls somewhere in the middle of those extremes. The answer to that question depends on "the extent to which the [governing] statute contains mandatory language that restricts the discretion of the [reviewing body] to deny [renewal] to applicants who claim to meet" the statutory requirements.[2] *Id.* In other words, if the governing statute directs that a license shall be renewed upon compliance with certain criteria, none of which involve the exercise of discretion by the reviewing body, the licensee has a property right in the reissuance of the license. *See Stauch v. City of Columbia Heights*, 212 F.3d 425, 430 (8th Cir. 2000); *Foss*, 161 F.3d at 588. Conversely, an applicant does not have a property interest in the renewal of a license if the reviewing body has discretion to deny renewal or to impose licensing criteria of its own creation. *See Jacobson*, 627 F.2d at 180.

[5] The key issue in this case, then, is whether the City has discretion to condition approval of a renewal application on compliance with its regulations. That issue was litigated to

---

[2] Our caselaw provides that in the absence of statutory language creating a property interest, a legitimate claim of entitlement can "be based on the conduct and representations of government officials when their actions lead to the creation of a 'mutually explicit understanding.' " *Doran*, 721 F.2d at 1185 (quoting *Perry v. Sindermann*, 408 U.S. 593, 601 (1972)). In this case, the City's apparent practice, prior to 1998, of approving annual renewal applications without separately verifying the Thorntons' compliance with local regulations lends support to a claim that the Thorntons had a legitimate expectation in future approvals. *See Richardson v. Town of Eastover*, 922 F.2d 1152, 1158 (4th Cir. 1991). There is, however, no evidence that the Thorntons were promised automatic approval of their renewal applications in perpetuity or that the City had disclaimed, by ordinance or otherwise, the power to condition approval of a renewal application on compliance with local regulations. *Cf. Wojcik v. City of Romulus*, 257 F.3d 600, 611 (6th Cir. 2001); *Richardson*, 922 F.2d at 1158*; Doran*, 721 F.2d at 1186. Longstanding enjoyment of a government benefit, without more, does not create a property right. *Doran*, 721 F.2d at 1186.

finality in the prior state court action. Having lost there, the Thorntons are not permitted to litigate the issue again here.

**[6]** Pursuant to the full faith and credit statute, 28 U.S.C. § 1738, federal courts must give state-court judgments " 'the same preclusive effect as would be given . . . under the law of the State in which the judgment was rendered.' " *Takahashi v. Bd. of Trustees*, 783 F.2d 848, 850 (9th Cir. 1986) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). This is true "even in a suit under [§] 1983." *Caldeira v. County of Kauai*, 866 F.2d 1175, 1177 (9th Cir. 1989). Because a prior Oregon judgment is asserted as having preclusive effect, Oregon issue preclusion law controls. *Dodd v. Hood River County*, 136 F.3d 1219, 1225 (9th Cir. 1998). Under Oregon law, the resolution of an issue by one tribunal

> may preclude relitigation of the issue in another proceeding if five requirements are met:
>
> 1.   The issue in the two proceedings is identical.
>
> 2.   The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.
>
> 3.   The party sought to be precluded has had a full and fair opportunity to be heard on that issue.
>
> 4.   The party sought to be precluded was a party or was in privity with a party to the prior proceeding.
>
> 5.   The prior proceeding was the type of proceeding to which this court will give preclusive effect.

*Nelson v. Emerald People's Util. Dist.*, 862 P.2d 1293, 1296-97 (Or. 1993) (citations omitted). Oregon applies issue preclu-

sion to issues of fact and law. *Drews v. EBI Cos.* (*In re Compensation of Drews*), 795 P.2d 531, 535 (Or. 1990).

[7] In this case, all five parts of the issue preclusion test are satisfied. As to the first element, the issue of whether cities may require that renewal applicants comply with local regulations was at the heart of the prior action. In the state proceeding, Mr. Thornton asserted that the City could not "deny . . . wrecker certificate renewal if [he met] the standards of [Or. Rev. Stat. §] 822.140(2)" and that the City lacked the power to "impose requirements more restrictive than [section] 822.135 as conditions for approving" a renewal application. In denying Mr. Thornton's motion for summary judgment and granting judgment in favor of the City, the trial court necessarily held that the City has the power to condition renewal applications on compliance with local regulations. *Cf. Nelson*, 862 P.2d at 1298-99; *Scherzinger v. Portland Cust. Civil Serv. Bd.*, 103 P.3d 1122, 1128-29 (Or. Ct. App. 2004). No other holding would have resolved Mr. Thornton's claims. In the present litigation, the Thorntons contend that the City lacks the power to condition a renewal application on compliance with local regulations. That raises precisely the same issue that was litigated to finality in the prior proceeding. *Cf. Dodd*, 136 F.3d at 1225; *Shuler v. Distrib. Trucking Co.*, 994 P.2d 167, 173-74 (Or. Ct. App. 1999). Although the Thorntons seek to distinguish the issue in the prior action on the ground that Ordinances 2808 and 2832 were not directly involved, the governing state statutes are the sole measure of the City's ability to condition approval of renewal applications on compliance with local regulations. The state court interpreted those statutes as allowing the City to consider its own regulations in determining whether to approve a renewal application. Those statutes have not changed.

[8] The remaining elements of issue preclusion are not seriously disputed. The foregoing issue was actually litigated to finality in state court, and Mr. Thornton had a full and fair opportunity to be heard at the trial and appellate levels. Mr.

Thornton was a party to the first action, *see Restatement (Second) of Judgments*, § 29 (1982), and the Thorntons have not argued on appeal that Mrs. Thornton lacks privity of interest with her husband and co-owner, so any argument of that nature is deemed waived. *See Smith*, 194 F.3d at 1052; *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994). Finally, the prior proceeding—a court action—is the type of proceeding to which Oregon courts give preclusive effect. *See, e.g., Rennie v. Freeway Transp.*, 656 P.2d 919, 927 (Or. 1982).

**[9]** With all five parts of the issue preclusion test satisfied, the Thorntons cannot revisit their challenge to the City's power to condition a renewal application on compliance with local regulations. *See Skeen v. Dep't of Human Res.*, 17 P.3d 526, 528-29 (Or. Ct. App. 2000). Because the City has the discretion to deny a renewal application for noncompliance with local regulations, City approval of a renewal application is a condition precedent to reissuance of a certificate. *See, e.g., Wojcik v. City of Romulus*, 257 F.3d 600, 611 (6th Cir. 2001). Without City approval, the Thorntons cannot establish a property right in the reissuance of a certificate, even if their application otherwise satisfies state law. *See Mustafa v. Clark County Sch. Dist.*, 157 F.3d 1169, 1178 (9th Cir. 1998); *Jacobson*, 627 F.2d at 180. Because the Thorntons cannot demonstrate a property right, their due process claim fails. *See, e.g., Foss*, 161 F.3d. at 588.

### 2.   *Equal Protection*

**[10]** To state a § 1983 claim for violation of the Equal Protection Clause " 'a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.' " *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (citation omitted). " 'The first step in equal protection analysis is to identify the [defendants' asserted] classification of groups.' " *Freeman v. City of Santa Anna*, 68 F.3d 1180, 1187 (9th Cir. 1995) (citation omitted). The groups must be com-

prised of similarly situated persons so that the factor motivating the alleged discrimination can be identified. *Id.* An equal protection claim will not lie by "conflating all persons not injured into a preferred class receiving better treatment" than the plaintiff. *Joyce v. Mavromatis*, 783 F.2d 56, 57 (6th Cir. 1986).

**[11]** According to the Thorntons, the City adopted Ordinance 2808 "to harm [them] because of [Mrs. Thornton's] American Indian Heritage."[3] The Thorntons have not, however, come forward with admissible evidence that, even viewed in the light most favorable to them, demonstrates discriminatory intent. *Cf. Bingham v. City of Manhattan Beach*, 341 F.3d 939, 948-49 (9th Cir. 2003); *Huebschen v. Dep't of Health & Soc. Servs.*, 716 F.2d 1167, 1171 72 (7th Cir. 1983). Although the Thorntons maintain that Defendants made a race-based classification, they have not offered evidence of racial discrimination, beyond the observation that Mrs. Thornton is Native American. Mere indifference to the effects of a decision on a particular class does not give rise to an equal protection claim, *see Nabozny v. Podlesny*, 92 F.3d 446, 454 (7th Cir. 1996), and conclusory statements of bias do not carry the nonmoving party's burden in opposition to a motion for summary judgment,[4] *see Buchanan v. City of Bolivar*, 99 F.3d 1352, 1360 (6th Cir. 1996). So, too, the fact that Mrs. Thornton is Native American and certain City councilmembers and administrators are not, standing alone, does not mean that Defendants have discriminated on the basis of race. *Bingham*, 341 F.3d at 948. Without evidence of discrimina-

---

[3]On appeal, the Thorntons also argue that the City retaliated against them for exercising their First Amendment rights. We do not consider this claim because it was not properly raised in the district court. *See Sofamor Danek Group, Inc. v. Brown*, 124 F.3d 1179, 1186 n.4 (9th Cir. 1997).

[4]We accept Mr. Thornton's factual averments as true, but we disregard averments that are not based on personal knowledge, *Coca-Cola Co. v. Overland*, 692 F.2d 1250, 1255 (9th Cir. 1982), or that are purely conclusory in nature, *Delange v. Dutra Const. Co.*, 183 F.3d 916, 921 (9th Cir. 1999).

tory intent, the Thorntons cannot make out a claim for discrimination based on a suspect classification.

As a fallback classification, the Thorntons group themselves with other wrecking yards in the state and other businesses in the City's "Heavy Industry" zone and contend that those yards and businesses are not subject to the same review requirements. Although "[a] successful equal protection claim may be brought by a 'class of one,' " the plaintiff still bears the burden of proving that she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002). The problem with grouping the Thorntons with other wrecking yards in the state or other businesses in the City's "Heavy Industry" zone is that those groups are not comprised of "similarly situated" persons. *See id.*; *Freeman*, 68 F.3d at 1187-88. There are no other auto wreckers in St. Helens and, therefore, the City is not imposing a burden on the Thorntons that it does not also impose on other wreckers within its jurisdiction. The City has no authority to regulate wreckers located beyond its boundaries. Similarly, there is nothing in the record to indicate that any of the other businesses in the City's "Heavy Industry" zone are either sufficiently comparable to wrecking yards or subject to the same state licensing requirements as auto wreckers. If the other businesses are not required to renew their respective certificates annually and are not directed to obtain the City's approval in the process, they are not similarly situated to the Thorntons. Evidence of different treatment of unlike groups does not support an equal protection claim. *Cf. Freeman*, 68 F.3d 1187-88.

## C.   42 U.S.C. § 1985

[12] Section 1985 creates a civil action for damages caused by two or more persons who "conspire . . . for the purpose of depriving" the injured person of "the equal protection of the laws, or of equal privileges and immunities under the laws"

and take or cause to be taken "any act in furtherance of the object of such conspiracy." 42 U.S.C. § 1985(3). "[T]he absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations." *Caldeira*, 866 F.2d at 1182. Accordingly, the Thorntons cannot sustain their § 1985 claim because they could not sustain a § 1983 claim based on the same facts. *See id.*

### D.   Oregon Tort Claims Act

**[13]** The OTCA, Or. Rev. Stat. §§ 30.260 to 30.300, insulates public employees and public bodies from " '[a]ny claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused.' " *Tennyson v. Children's Servs. Div.*, 775 P.2d 1365, 1370 (Or. 1989) (citation omitted). Oregon courts define "discretionary function" as an action that

> involves room for policy judgment or the responsibility for deciding the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued. . . . [I]nsofar as an official action involves both the determination of facts and simple cause-and-effect relationships and also the assessment of costs and benefits, the evaluation of relative effectiveness and risks, and a choice among competing goals and priorities, an official has discretion to the extent that he has been delegated responsibility for the latter kind of value judgment.

*McBride v. Magnuson*, 578 P.2d 1259, 1260-61 (Or. 1978) (quotation marks and citations omitted).

**[14]** While the line between protected discretionary acts and unprotected ministerial acts is not always clear, the question in this case is not a close one. The City's decision, expressed in two ordinances, to establish a formal process for reviewing renewal applications presents a classic example of

a discretionary act, as that decision involved an exercise of judgment on a matter of policy made by the body that had the authority to act. *See Ramirez v. Haw. T & S Enters.*, 39 P.3d 931, 932-34 (Or. Ct. App. 2002); *Sager v. City of Portland*, 684 P.2d 600, 603-05 (Or. Ct. App. 1984). The Thorntons cannot escape the force of the OTCA by arguing that the application of Ordinances 2808 and 2832 was tortious. If the ordinance is contrary to state law (a question we were not called on to consider), the City is immune under section 30.265(3)(f). *Burke v. Children's Servs. Div.*, 607 P.2d 141, 148 (Or. 1980). If the ordinance is consonant with state law, the City is immune because " 'acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable.' " *Smith v. Cooper*, 475 P.2d 78, 85 n.3 (Or. 1970) (quoting *Dalehite v. United States*, 346 U.S. 15, 36 (1953)); *see also Ramirez*, 39 P.3d at 933. The Thorntons do not complain that City officials or employees applied the ordinances in bad faith or with malice, *cf.* Or. Rev. Stat. § 30.265(3)(f), that the ordinances were applied negligently or that City employees otherwise intentionally interfered with their contractual relationships. Because the ordinances were applied under apparent authority of law and any harm to the Thorntons flows from the original, discretionary act, the OTCA bars the Thorntons' state law claim.

## III.   Conclusion

Summary judgment in favor of Defendants is affirmed.

**AFFIRMED.**